**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HERMAN L. GAINES, | : |
| Petitioner, | :     Civil Action No. 15-761 (MAS) |
| v. | :     **OPINION** |
| STEPHEN D'ILIO, et al., | : |
| Respondents. | : |

**SHIPP, District Judge**

Pro se petitioner Herman L. Gaines ("Petitioner" or "Gaines") is presently confined at New Jersey State Prison ("NJSP") in Trenton, New Jersey after his December 10, 2001 conviction (ECF No. 29-18 at 3-4) and March 8, 2002 sentencing (ECF No. 1-3 at 11-12) for: (1) aggravated manslaughter; (2) possession of a weapon for an unlawful purpose; and (3) unlawful possession of a weapon. He has submitted a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition"). (ECF No. 1.) For the reasons explained in this Opinion, the Court denies the Petition and the certificate of appealability.

## I.    FACTUAL BACKGROUND & PROCEDURAL HISTORY

### A.    Trial, Direct Appeal, and Post-Conviction Relief

This Court, affording the state court's factual determinations the appropriate deference, *see* 28 U.S.C. § 2254(e)(1),[1] will reproduce the recitation of facts as set forth by the Appellate Division

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

of the Superior Court of New Jersey in its June 12, 2014 written opinion (ECF No. 1-6 at 69-75) ("*Gaines I*"). The *Gaines I* court affirmed the: (a) October 13, 2010 order (ECF Nos. 1-6 at 24-25 and 29-34 at 1-2) entered by Judge Robert B. Reed ("Judge Reed") of the Law Division of the Superior Court of New Jersey ("Law Division") that limited the testimonial hearing on Gaines's petition for post-conviction relief ("PCR") to a single issue, i.e., whether his trial counsel was ineffective for failing to call eight witnesses; and (b) the Law Division's February 28, 2012 order (ECF No. 1-6 at 14-15) entered by Judge John H. Pursel ("Judge Pursel") that denied Gaines's PCR petition following an evidentiary hearing. (ECF No. 1-6 at 14-15.)

The *Gaines I* court discerned the following facts from the record on appeal:

The case began in 1998 when fifteen-year-old Kevin Hill was shot and killed in the backyard of a Franklin Township home where he and more than 200 other people were attending a high school graduation party. A Somerset County grand jury subsequently charged Gaines in a three-count indictment with first-degree murder, possession of a weapon for an unlawful purpose, and unlawful possession of a weapon. At trial, based on the testimony of two eyewitnesses who knew Gaines and a third witness to whom Gaines confessed, as well as evidence linking him to the murder weapon, the jury found Gaines was not guilty of murder, but guilty of the lesser included offense of aggravated manslaughter. The jury also found Gaines guilty of both weapons offenses. (ECF No. 1-6 at 70.)

At sentencing, the court merged counts two and three, and sentenced Gaines to a thirty-year prison term subject to the No Early Release Act ("NERA"), N.J. Stat. Ann. § 2C:43-7.2, on the lesser included aggravated manslaughter offense, and to a concurrent ten-year prison term with five years of parole ineligibility on the remaining weapons offense. The court also imposed assessments and penalties. (*Id.* at 70-72.)

On May 26, 2005, the Appellate Division affirmed Gaines's convictions but remanded for resentencing.[2] Gaines subsequently filed a PCR petition. (ECF No. 1-3 at 13-30.) The following month, he was resentenced to a twenty-eight year aggregate custodial term. (ECF No. 1-6 at 71.)

Gaines appealed his sentence and thereafter moved to withdraw his PCR petition, which the court permitted him to do "without prejudice to [defendant's] right to re-file the petition after the conclusion of his direct appeal, as within time and as a first PCR." (ECF No. 1-6 at 71.) Gaines then attempted to withdraw his appeal so that he could proceed with the PCR petition. *Id.* Nearly a year later, Gaines's appeal was dismissed. He blamed his attorney for the intervening delay. In any event, he refiled his PCR petition and later supplemented it. (*Id.*)

In the first supplemental petition, Gaines alleged that his trial counsel was ineffective for failing to subpoena witnesses "pertaining to attacking the credibility of [his] accusers, establishing an alibi defense, [and] raising the potential for third-party guilt, etc." (ECF No. 1-6 at 71-72.) In another supplemental petition, Gaines added arguments that trial counsel failed to advise him of what witnesses he would and would not be calling; and that appellate counsel failed to keep him informed about what was happening in the proceedings, failed to inform him that she withdrew his PCR petition, and failed to inform him that she dismissed his appeal. (*Id.* at 72.)

In his October 13, 2010 written opinion ruling on Gaines's petition, Judge Reed recounted Gaines's arguments as follows: "[T]he trial court erred by not removing trial counsel due to a conflict of interest; and trial counsel was ineffective for failing to impeach the credibility of many of the State's witnesses, call numerous witnesses on defendant's behalf, properly prepare

---

[2] *State v. Gaines*, 873 A.2d 688, 696 (N.J. Super. Ct. App. Div.), *cert. denied*, 185 N.J. 264 (2005); *State v. Gaines*, No. A-4428-01 (App. Div. May 26, 2005). The full Appellate Division opinion is unpublished.

3

defendant for cross-examination, and present any defense. (*Id.*) Judge Reed ruled that "the petition was not time-barred by [New Jersey Rule of Court] 3:22-1." (*Id.*)

After thoroughly analyzing each issue, Judge Reed concluded that Gaines had established a prima facie case only as to trial counsel's failure to call approximately eight witnesses at trial. (ECF No. 1-6 at 72-73.) Judge Reed granted Gaines an evidentiary hearing concerning this failure but denied an evidentiary hearing on the remaining issues. (*Id.* at 73.)

Judge Pursel conducted the evidentiary hearing on January 30, 2012. (*Id.*) In his February 28, 2012 written opinion, Judge Pursel: (1) considered counsel's reasons for declining to call the witnesses identified by Gaines, and (2) denied his (a) PCR petition and (b) motions to (i) supplement or settle the record and (ii) amend his PCR petition. (*Id.*)

Gaines chose to represent himself on appeal from the denial of his PCR petition. (*Id.*) The Appellate Division remanded the matter to determine whether Gaines knowingly waived his right to counsel on appeal. Following the court's decision that Gaines knowingly waived his right to appellate counsel, and the appointment of standby counsel, Gaines filed a pro se brief and an amended pro se brief in which he raised the following points for consideration:

> (1) "Judges are engaging in 'judicial vigilantism' to deny [Gaines] fair and competent application of law, to deny him fair and timely process of his appellate proceedings, and to thwart his attempts to have all evidence of his innocence considered" ("Issue 1");
>
> (2) "Defendant's lawyers have deliberately sabotaged his defense and 'threw' his trial [by] thwart[ing] the introduction of exculpatory evidence and attempt[ing] to get his legal proceedings dismissed to prevent him from proving his innocence. Their performance was not only deficient but also materially affected the outcome of trial and subsequent legal proceedings. These acts violated defendant's constitutional rights to a fair trial, effective assistance, and Due Process" ("Issue 2"); and
>
> (3) The uniformity exhibited by the various departments and individuals who have not only blocked exculpatory evidence from being considered by a jury but also blocked it from the record. This

4

> opposition is conspiratorial, illegal, and violative of defendant's due
> process rights" ("Issue 3").

(ECF No. 1-6 at 73-74.)

In its June 12, 2014 written opinion, the *Gaines I* court rejected the arguments in Issue 2 and affirmed the orders denying Gaines's PCR petition, "substantially for the reasons explained by Judges Reed and Pursel in their thorough decisions disposing of the issues defendant raised before them." (*Id.* at 75.) The *Gaines I* court found the arguments set forth in Issue 1 and Issue 3 to be "without sufficient merit to warrant discussion in a written opinion." (*Id.*)

## B. Petition for Writ of Habeas Corpus

Petitioner submitted the Petition to NJSP officials for filing on January 31, 2015. (ECF No. 1 at 20.) This Court screened the Petition and issued a September 9, 2016 Memorandum and Order dismissing with prejudice Grounds I and VI of the Petition. (ECF No. 13.) Ground I had alleged ineffective assistance of counsel claims against Petitioner's PCR counsel, Ingrid Yurchenco, Esquire (ECF No. 1 at 6); however, ineffective assistance of PCR counsel is not a cognizable claim on federal habeas. *See* 28 U.S.C. § 2254(i). Ground VI had alleged ineffective assistance of counsel claims that Petitioner's counsel, Claire Drugach, Esquire, had terminated his first PCR application and resentencing appeal without Petitioner's knowledge or consent. (ECF No. 1 at 5.) Petitioner's own exhibits, however, showed that Petitioner requested the termination. Grounds I and VI, accordingly, were dismissed with prejudice. (ECF No. 13 at 2-3; ECF No. 1-5 at 65; *id.* at 70; ECF No. 1-6 at 9.)

In Grounds II and III, Gaines contends that he was deprived of his right to effective assistance of counsel because Mr. Jordan failed to provide exonerating evidence, given that he did not present trial testimony from Corey Coleman ("Coleman") and Jamilah Gorrell ("Gorrell"). (ECF No. 1 at 8-11.)

5

In Ground IV, Petitioner contends that he suffered deprivation of due process by Mr. Jordan and by judges throughout the various appeals and motions he has filed. (*Id.* at 11.) More specifically, Petitioner alleges that trial court Judge Victor Ashrafi's ("Judge Ashrafi") refusal to allow him to represent himself pro se was a violation of due process. (*Id.* at 11-13.)

In Ground V, Petitioner challenges Judge Pursel's decision (ECF No. 29-38) to deny: (1) the motion to supplement the record, (2) the motion to amend the verified petition after Judge Reed had ruled on the motion, and (3) Gaines's PCR claims related to Coleman's testimony (collectively referred to hereinafter as "the PCR Court Ruling"). (ECF No. 1 at 13-14.)

On November 18, 2016, Respondents filed a Response to the Petition. (ECF No. 29.)

As to Grounds Two and Three, Respondents argue that Petitioner failed to prove his claim because "[t]he record shows that his trial counsel acted reasonably in the manner in which he represented [P]etitioner." (ECF No. 29-1 at 30.)

As to Ground Four, Respondents argue that Petitioner affirmatively waived his right to proceed pro se "not only once but twice during the course of litigation." (ECF No. 29-1 at 35.)

As to Ground Five, Respondents argue that the PCR Rulings (ECF No. 1-6 at 14-15, 24-25; No. 29-38 at 1-5; No. 1-3 at 35-91, 92-112, 113-154; and No. 1-5 at 35-39) were "proper [ ] and justified [ ] given the testimony or procedural posture presented to the Court." (ECF No. 29-1 at 35.)

This Court has considered the parties' submissions and for the reasons set forth below, the Petition is denied.

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of

the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When a claim has been adjudicated on the merits in state court proceedings, a writ of habeas corpus shall not issue unless the adjudication of the claim,

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2). *See also Parker v. Matthews*, 567 U.S. 37, 40 (2012); *Conover v. Main*, 601 F. App'x 112, 114 (3d Cir. 2015) (citing § 2254(d)).

With respect to § 2254(d)(1), "clearly established law includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions," as of the time of the relevant state-court decision. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (internal quotations omitted)). A state-court decision involves an "unreasonable application" of clearly established federal law if the state court: (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 407. A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a [different] result." *Williams*, 529 U.S. at 405-06. Federal courts must confine their examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

With respect to § 2254(d)(2), a state court decision is based on an unreasonable determination of the facts only if the state court's factual findings are "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). A federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e); *see Harrington v. Richter*, 562 U.S. 86, 98, 100 (2011) (habeas petitioners carry the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits); *Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of rebutting presumption by clear and convincing evidence); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (affording factual determinations of state trial and appellate courts a "presumption of correctness"). *See also Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).

Furthermore, federal courts must follow a highly deferential standard when evaluating, and thus give the benefit of the doubt to, state court decisions. *See Felkner v. Jackson*, 562 U.S. 594, 598 (2011); *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013). In addition, a court may not grant a writ of habeas corpus on a New Jersey conviction challenge unless the petitioner has "exhausted the remedies available in the courts of the State" under § 2254(b)(1)(A) by fairly presenting each federal ground that is raised in the petition to all three levels of the New Jersey courts (i.e., the Law Division, the Appellate Division, and the New Jersey Supreme Court) or exhaustion is excused under § 2254(b)(1)(B). *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Rose v. Lundy*, 455 U.S. 509 (1982); *Henderson v. Frank*, 155 F.3d 159, 164 (3d Cir. 1998); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). To the extent that a petitioner's constitutional claims are unexhausted, a court can nevertheless deny them on the merits under § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir.

8

2005) ("Under § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

## III.   DISCUSSION

### A.   Grounds II and III of the Petition: Ineffective Assistance of Counsel Claims

Petitioner alleges deprivation of his constitutional right to effective assistance of counsel because Mr. Jordan did not present purportedly exonerating evidence from two individuals at trial: Corey Coleman and Jamilah Gorrell.

Ground II alleges that Mr. Jordan was ineffective with respect to Coleman as follows:

> Trial counsel was ineffective in violation of my 5th, 6th, and 14th Constitutional Amendment rights to effective representation, fair trial, and due process by preventing Corey Coleman from delivering testimony at trial which exonerated me . . . because he witnessed Raymond Rivera admit guilt for the crime [of] which I'm convicted. Trial counsel was aware of Coleman's proposed testimony prior to trial but justified preventing a jury from considering it because Coleman said people were saying in the "street" that I was responsible for the shooting, because Coleman "heard" on the "street" that I was firing a gun at the event, and because Coleman "heard" on the "street" that I attended the party.

(ECF No. 1 at 8.) Coleman himself had not seen the shooting. (ECF No. 29-1 at 27.)

Ground III alleges that Mr. Jordan was ineffective with respect to Gorrell as follows:

> Trial counsel committed ineffective assistance of counsel in violation of my 5th, 6th, and 14th Constitutional Amendment rights to effective representation, fair trial, and due process by preventing Jamilah Gorrell from delivering testimony at trial which exonerated me . . . because DaNeil Newsome admitted to her that he committed the crime for which I'm convicted. Trial counsel was aware of Gorrell's proposed testimony prior to trial but justified preventing a jury from considering it because of his claim that her testimony was unnecessary because the jury already heard evidence which exonerated me. That's an outright lie. The trial transcripts prove the jury never heard or was exposed to any evidence whatsoever that exonerated me or showed that someone else committed the crime for which I'm convicted.

(ECF No. 1 at 9.) Gorrell herself had not seen the shooting. (ECF No. 29-1 at 27.)

9

Respondents contend that Gaines has failed to sustain his burden of making a prima facie showing of ineffective assistance of counsel. (ECF No. 29-1 at 25-30.)

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. "[T]he right to counsel is the right to the effective assistance of counsel," *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970), and counsel can deprive a defendant of the right by "failing to render adequate legal assistance." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 346 (1980)). The Supreme Court's well-established two-prong test governing claims of ineffective assistance of counsel is set forth in *Strickland*.

First, a petitioner must demonstrate that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment" (*id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007)) and that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299. In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation is evaluated under each case's particular facts, viewed as of the time of the challenged conduct of counsel. *Id.* So, to meet the deficient performance prong, a defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. In scrutinizing counsel's performance, courts must be highly deferential and "indulge a strong

10

presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Second, even where a petitioner is able to show that counsel's representation was deficient, the petitioner must still affirmatively demonstrate that counsel's deficient performance prejudiced the defense. *Id.* at 692-93. To satisfy this prejudice prong, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693.[3] Rather, a petitioner must demonstrate that "there is a reasonable probability that the result of the [case] would have been different absent the deficient act or omission." *Hinton v. Alabama*, 134 S. Ct. 1081, 1083 (2014) (per curiam). *See also Strickland*, 466 U.S. at 694 (a petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome"). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

The well-established two-prong *Strickland* test requires satisfaction of both components for a claim that counsel's assistance was so defective as to require reversal of a conviction. Given that "failure to satisfy either prong defeats an ineffective assistance claim" and "it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002); *Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

---

[3] The reasonable probability standard is less demanding than the preponderance of the evidence standard. *See Nix v. Whiteside*, 475 U.S. 157, 175 (1986); *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999).

When a federal habeas petition under § 2254 is based upon an ineffective assistance of counsel claim, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (quoting *Harrington*, 562 U.S. at 101). For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* (internal quotation marks omitted). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* "Federal habeas review of ineffective assistance of counsel claims is thus 'doubly deferential.'" *Id.* (quoting *Cullen*, 563 U.S. at 190). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted).

For the following reasons, Petitioner has not shown that he is entitled to federal habeas relief based upon alleged ineffective assistance of counsel.

### 1. Alleged Ineffective Assistance of Counsel for Failure to Provide Purportedly Exonerating Testimony from Jamilah Gorrell (Ground III)

The trial court expressly gave Petitioner the opportunity to raise issues regarding witness appearances after counsel stated on the December 2, 2001 record that several witnesses had not reported for trial that day. One such witness was Gorrell. Mr. Jordan "was going to tell [her] not to come anyway," given that she was "nine months pregnant" and the fact that she and other absent witnesses would have offered only cumulative evidence. (December 5, 2001 Tr., ECF No. 29-15 at 15 (Jordan: "[T]hey were the same kind of witnesses we had yesterday, and that's been testified to amply. We don't want to hold [trial] up to have a couple of more cumulative witnesses").) The

12

trial judge expressly gave Petitioner the opportunity to raise issues regarding absent witnesses

whom he felt were necessary to his defense, if any. To this invitation, Petitioner responded:

> Court: "So you're telling me that you're not going to call the [witnesses that were to come today who have not arrived], they might be cumulative, that is saying the same thing that people said about the lighting conditions and the crowd at the party that we heard yesterday, and you can, I think, rationally make the determination that those points have been made and you don't need to call additional witnesses for those same points."
>
> \*\*\*
>
> Defendant: "The only concern I have is Dishon Page. I would like him to come up and testify . . . and that's the only concern I have."
>
> Court: "Dishon Page is the only one you think has some importance at this point?"
>
> Defendant: "At this point, yes."

(ECF No. 29-15 at 15-16.)

In his January 2012 Motion to Amend the Verified PCR Petition, Petitioner argued that:

> [Mr.] Jordan deliberately failed to call ... Gorrell ... to the stand to testify in Petitioner's defense . . . Jordan was unconstitutionally ineffective [and] it was his intent to be so . . . Gorrell gave a sworn taped statement to authorities, stating that DaNeil Newsome admitted to her twice that he shot Kevin Hill inadvertently in an attempt to shoot Nykeme Godfrey . . . The introduction of Gorrell's proposed testimony at trial would have provided a trier of fact with evidence of Newsome's guilt . . . The jury was not made aware that there was other evidence (Gorrell's sworn account) indicating that Newsome shot Kevin Hill.

(ECF No. 1-3 at 122, 125, 126-28.) In his pro se brief and amended pro se brief on appeal from

denial of his PCR petition, Gaines claimed counsel had "deliberately sabotaged his defense and

'threw' his trial [by] thwart[ing] the introduction of exculpatory evidence." (ECF No. 1-6 at 74.)

The Appellate Division in *Gaines I* rejected these arguments and "affirm[ed] the orders

denying [the] PCR petition, substantially for the reasons explained by Judges Reed and Pursel in

their thorough decisions disposing of the issues defendant raised before them." (ECF No. 1-6 at

74-75.) In his lengthy October 13, 2010 written opinion, Judge Reed rejected Petitioner's ineffective assistance of counsel claims and expressly applied *Strickland*, finding that Petitioner "has not satisfied the *Strickland/Fritz* test in regard to Ms. Gorrell's absence on the stand . . . , as there is no evidence that [trial counsel's] strategy deprived Defendant of the counsel guaranteed to him by the Sixth Amendment, or prejudiced Defendant to the point where an unreliable trial result[ed]" (ECF No. 1-3 at 76-81 (Reed, J.); *see also* ECF No. 29-38 at 5 (Pursel, J.) ("It appears . . . that the petitioner . . . is making a motion to re-consider Judge Reed's October 13, 2010 Order denying petitioner's post-conviction relief petition with regard to trial counsel's failure to call Ms. Gorrell. The petitioner may appeal the decision of Judge Reed but this court finds no justification for modifying any record of matters presented to Judge Reed and finds that there is no new evidence which would require the court to re-consider Judge Reed's decision. That decision was based on numerous grounds and is yet a matter of record").)

After providing an in-depth discussion of the *Strickland* framework governing Petitioner's ineffective assistance claim (ECF No. 1-3 at 76-78), Judge Reed examined each of Mr. Jordan's witness decisions challenged by Petitioner. With respect to Gorrell, Judge Reed noted as follows:

> Evaluating the conduct from counsel's perspective at the time, it was entirely reasonable for Mr. Jordan to conclude that Defendant had no issue with his characterization of Ms. Gorrell's testimony as cumulative, and his subsequent decision not to call her to the stand . . . Therefore, the Court finds that the state court's ruling on this claim was a reasonable application of Supreme Court law, based on a reasonable determination of the facts.

(ECF No. 1-3 at 78, 79, 81.)

Despite his acknowledgment at trial of the cumulative nature of the issues about which Gorrell would have testified (ECF No. 1-3 at 69, 78-81), in his habeas petition Petitioner now criticizes counsel's failure to offer Gorrell's testimony, arguing that it was exculpatory and would have materially affected the case's outcome. This Court finds that *Gaines I*'s affirmance and Judge

14

Reed's ruling were not contrary to or an unreasonable application of clearly established federal law and not based on an unreasonable determination of facts.

With regard to the first prong of the *Strickland* test, Judge Reed ruled that Petitioner had "failed to establish that the failure to call [Ms. Gorrell] to testify was such a 'serious error' as to make counsel's performance deficient," deciding as follows:

> With regard to Ms. Gorrell, it can be implied from the trial transcript and from Defendant's motion papers that the decision not to call her to the stand, although made by trial counsel, was done with Defendant's knowledge and consent . . . After defense counsel made his decision not to call several cumulative witnesses, Ms. Gorrell included, Judge Ashrafi made it a point to ensure that Defendant did not object to counsel's decision . . . At no point during this discussion, wherein the Court gave Defendant ample opportunity to request that a particular witness be called to testify, did Defendant request that Ms. Gorrell be called to the stand. "Evaluating the conduct from counsel's perspective at the time," it was entirely reasonable for Mr. Jordan to conclude that Defendant had no issue with his characterization of Ms. Gorrell's testimony as cumulative, and his subsequent decision not to call her to the stand. This Court must avoid the "distorting effects of hindsight" when considering Mr. Jordan's decision not to call Ms. Gorrell to the stand. Defendant was fully aware of Mr. Jordan's decision and when afforded the opportunity by the Court to indicate any disagreement with that decision, not only declined to do so, but affirmatively stated that Dishon Page was the only witness whom he had concerns about not testifying. With regard to Ms. Gorrell, Defendant has failed to establish that the failure to call her to testify was such a "serious error" as to make counsel's performance deficient.

(ECF No. 1-3 at 79, 81.) This was a reasonable application of *Strickland*'s performance prong.

It was not unreasonable for Mr. Jordan to decide that Gorrell's testimony was unnecessary in light of its duplicative nature and his client's election to tell the trial judge that Dishon Page – not Jamilah Gorrell – was Petitioner's "only concern" for testimony purposes. (ECF No. 29-15 at 15-16.) Mr. Jordan made a strategic decision as counsel not to "hold [trial] up" (ECF No. 29-15 at 15) with "the same kind" of testimony from Gorrell (and other absent witnesses) as the jury had heard just the day before. That performance as counsel was not unreasonable or ineffective.

Petitioner cannot raise an ineffective assistance of counsel claim simply because he is unhappy that the trial did not conclude as he wished. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n [ineffective assistance of counsel] analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective"); *Kim v. United States*, No. 05-3407, 2006 WL 981173, at *3 (D.N.J. Apr. 4, 2006) ("[T]hat [he] now appears unhappy with the result does nothing to change the fact that there is not the slightest indication that petitioner received ineffective assistance of counsel").

Furthermore, Mr. Jordan's decision not to pursue cumulative testimony from Gorrell was a strategic decision, which is generally afforded great deference on review, *Strickland*, 466 U.S. at 681, 690-91; *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and which must be "[e]valuat[ed] ... from counsel's perspective *at the time*" (ECF No. 1-3 at 81) (emphasis added), as Judge Reed did in this case. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective *at the time*") (emphasis added). Trial is the relevant point for considering counsel's assistance in this case: Mr. Jordan represented to Judge Ashrafi that Gorrell would have testified only about topics that were redundant of prior witnesses' evidence (ECF No. 29-15 at 15 ("[T]hey were the same kind of witnesses we had yesterday, and that's been testified to amply. We don't want to hold [trial] up to have a couple of more cumulative witnesses")), and Gaines told the trial court that Dishon Page was the only witness of "concern [and] importance" who would offer the jury testimony they had not yet heard. (ECF No. 29-15 at 15-16.) The reasonable inference from the record is that neither Mr. Jordan *nor* Petitioner knew for certain at trial what Gorrell would have said on the stand, and Petitioner has not shown otherwise as of that point in time.

16

In addition, Judge Reed's rulings—that Gorrell's testimony would indeed have been cumulative on several topics about which Gorrell would have testified, and that Mr. Jordan's decision was therefore not ineffective (ECF No. 1-3 at 78, 79, 81) -- were not objectively unreasonable in light of the evidence presented in the state-court proceeding, including:

> Trial witness Erica Davies: "[W]here I was standing before wasn't well lit. But when I moved towards the crowd, it was lit enough. It was dim . . . [Kevin Hill] was facing the crowd . . . It was a lot of people that was getting ran over" (agreeing with prosecution that the area was well-lit toward the crowd because "it was a porch light by the back, like a deck light or something" and "there was more lighting towards the crowd. That means there was lighting towards the deck. [T]here was people everywhere")
> (ECF No. 29-14 at 38, 39, 40);

> Trial witness Mary Elizabeth Scott Young: "It was dark, but it was dark in this corner over here where the table was. But it wasn't no light shining over there, and there was so many kids crowding around, if it was a flash, I would have seen it" (stating to the prosecutor that the light on her deck was on at the time of the shooting)
> (ECF No. 29-14 at 43, 44);

> Trial witness Latia Mendez: "It was dark back there" (testifying to the prosecutor that it was dark in the back area of the garden, that there was no light coming from the house in the rear of the property, and that "there was some people there [at the party] that made [me] uncomfortable")
> (ECF No. 29-14 at 50, 51, 53);

> Trial witness Robert Mack: "[There were] [a]bout five [people in the area,] about five boys and a girl . . . There was no lighting. The only lighting was over right here, was the deck where the DJ sat . . . there was light, the light only lit up about this much (testifying to the prosecutor that "[t]he majority of people was right here and right over there [dancing on the table between the homes and in front of the fence]" and that "there were about two, 250 people there") (ECF No. 29-14 at 75, 77);

> Trial witness Kendyl Auten: "[There were] people ... dancing on the table" (testifying to the prosecutor that "[i]t was a lot of people [dancing at the back of the property] . . . But I didn't know everyone")
> (ECF No. 29-14 at 82, 83);

> Trial witness Kahliff Harris: "In that area ..., there was a few, I seen like there was people all lined up around the table behind me. So I'd say there was a good 25 people around me . . . I knew some of them, not everybody"
> (ECF No. 29-14 at 85, 86); and

> Trial witness Tiara Maria Woodson: "It [the area where I was standing at the party when I heard a shot] was not well lit"
> (ECF 29-14 at 88).

This record demonstrates that Judge Reed's characterization of the cumulative nature of the trial testimony on issues of crowd size and lighting is entitled to § 2254(e)'s presumption of correctness, and Petitioner has not offered clear and convincing evidence to rebut that characterization. The state court ruling on Gaines's failure to meet the *Strickland* performance prong was therefore not "contrary to or an unreasonable application of clearly established federal law" and not based on an "unreasonable determination of facts." This "failure to satisfy [one of the *Strickland*] prong[s]" is itself sufficient to "defeat[] an ineffective assistance claim," but since "it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," this Court will also now consider *Strickland*'s second test. This examination, though, only underscores Petitioner's failure to state an ineffective assistance claim.

Gaines falls short of meeting the prejudice prong under *Strickland* because: Petitioner himself did not regard Gorrell as necessary at trial; and Petitioner has not demonstrated to a reasonable probability that Gorrell's testimony would have exculpated him in the jury's eyes in the face of all other evidence of his guilt at trial. Such evidence included:

- Motive evidence that Gaines went to Robert Mack's graduation party to settle Gaines's history of problems with attendee DD McDougald. For example, according to the prosecutor's summation to the jury, Gaines purportedly attended the party "to congratulate [Mack] for his accomplishment," but "d[idn't] even stay to congratulate Robert Mack" and instead remained only fifteen minutes at the party of "250 people from this close knit community" (*see* ECF No. 29-16 at 20);

18

- Witnesses Latia Mendez and Shamerra Boston provided corroborating testimony of victim Kevin Hill's northeasterly direction location, from which he could have received from the bushes the left clavicle shot that killed him (*id.* (prosecutor's summation));

- Evidence that after the gunfire, chaos ensued at the party. Gaines, having played in that garden area since youth, had great familiarity with the party's layout – which would have afforded him the capacity to escape undetected, according to the prosecution (*id.* at 21 (prosecutor's summation));

- Evidence that the handgun used to kill Kevin Hill was owned by Gaines's uncle. Petitioner, who did not himself have a handgun license, thus had access to the weapon within his family's household, as the prosecutor argued to the jury (*id.* at 23 (prosecutor's summation));

- Testimony from Petitioner's ex-girlfriend, Danielle Pierson, that Petitioner told her he had shot at Dishon Page at the party, but had accidentally hit Kevin Hill. According to the prosecutor's summation to the jury, Pierson also testified that Petitioner told her he had disposed of the weapon by giving it to Phillip Scott (*see id.*); and

- Witness Nefitia Bridgeforth, who had been at the party and later voluntarily gave a taped statement to police, testified that she heard a gunshot go off, that she saw sparks from the bushes, that the person who was holding the gun was Gaines, and that he fled. Bridgeforth said that she saw Kevin Hill go down, and that is when she went down to the ground. Bridgeforth said that she could see Gaines's face from the muzzle flash of the weapon, which had illuminated the area. Bridgeforth's testimony was consistent with witness Shamerra Boston's, who had been at a different location at the party. (*See id.* at 19-23 and 25-31.) Bridgeforth's statement to police was also unequivocal and she answered multiple times that shots came from Gaines's weapon. During summation to the jury, the prosecutor summarized the key points from Bridgeforth's testimony:

Detective Jansen:     And he [Gaines] was holding the gun?

Bridgeforth:          Yes.

Detective Jansen:     There's no mistaking it?

Bridgeforth:          Nope.

Detective Jansen:     And whose hands was that gun in?

| Bridgeforth: | Herman Gaines. |
|---|---|
| [Sergeant] Colucci: | There's no mistaking that? |
| Bridgeforth: | No. |
| [Sergeant] Colucci: | And that shot came from the gun that was in Herman Gaines's hand? |
| Bridgeforth: | Yes. |
| [Police]: | [T]here's no mistaking who shot Kevin Hill? |
| Bridgeforth: | No mistake. |
| [Police]: | And who shot Kevin Hill? |
| Bridgeforth: | Herman Gaines . . . [He was] about six or seven feet [away from Kevin Hill]. He [Gaines] was in the bushes. It was clear enough to see the gunshot, the gun, and him. |
| [Sergeant Colucci]: | So there's nothing obstructing your view? |
| Bridgeforth: | No. |

(*Id.*)

In these circumstances, Petitioner cannot demonstrate that but for Mr. Jordan's trial testimony decision about Gorrell, the result of trial would have been different. When asked in open court whether he had a problem with the defense strategy, Petitioner did not raise any objection. Even after Judge Ashrafi explained how absent witnesses may be cumulative and indicated that the court would make every effort to produce all witnesses Petitioner deemed important, Gaines indicated that the only witness he did not deem cumulative and wanted present was Dishon Page. (ECF No. 29-15 at 15-16.) Petitioner's claim that Mr. Jordan's assistance was unconstitutionally ineffective is therefore frivolous, and it is disingenuous for Petitioner to claim his counsel was ineffective for not calling a cumulative witness whose testimony Petitioner himself did not consider significant. "The benchmark for judging any claim of ineffectiveness must be whether

counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686; *Ross v. Varano*, 712 F.3d 784, 797-98 (3d Cir. 2013). That is not the case here.

Considering these circumstances, it was not contrary to or an unreasonable application (§ 2254(d)(1)) of *Strickland* and its progeny, and it was not based on an unreasonable determination of the facts (§ 2254(d)(1)), for Judge Reed to rule (ECF No. 1-3 at 78-81) and for the *Gaines I* court to affirm (ECF No. 1-6 at 75) that Petitioner "has not satisfied the *Strickland/Fritz* test in regard to Ms. Gorrell's absence on the stand [because he has] not shown that the failure to call Ms. Gorrell resulted in an unreliable jury verdict." (ECF No. 1-3 at 78-81.)

Although Petitioner's failure to meet either *Strickland* prong would have made Ground III unsuccessful, he has failed to satisfy both *Strickland* prongs, as Judge Reed explained (ECF No. 1-3) and the Appellate Division affirmed (ECF No. 1-6). Petitioner has not and cannot point to a ruling in the *Gaines I* decision on the Gorrell testimony that is contrary to, or an unreasonable application of, the constitutional jurisprudence of *Strickland*. Furthermore, Gaines does not identify any U.S. Supreme Court precedent that the *Gaines I* court unreasonably applied concerning Mr. Jordan's decision with respect to the Gorrell testimony. Habeas relief, therefore, is denied with respect to Petitioner's ineffective assistance of counsel claim in Ground III.

## 2. Alleged Ineffective Assistance of Counsel for Failure to Provide Purportedly Exonerating Testimony from Corey Coleman (Ground II)

Petitioner next criticizes counsel's exclusion of Coleman's testimony at trial as follows:

> Jordan ... justified Coleman's exclusion at trial because Coleman said defendant was shooting a gun in the street at the party and people were saying defendant was responsible for the killing. This was inadmissible hearsay and posed no threat to the trial defense because the jury would never have been allowed to hear it. Instead, Jordan used this inadmissible hearsay as a justification for preventing the jury from hearing Coleman testify that Rivera committed the killing and not defendant.

21

(ECF No. 1-2 at 41-42.)

Judge Reed's October 13, 2010 PCR opinion (ECF No. 1-3 at 76-78) ruled that an evidentiary hearing was necessary concerning Coleman, since only one of the eight witnesses relevant to Petitioner's claim was mentioned in the record (i.e., Gorrell). (ECF No. 1-3 at 78, 82.) Judge Reed determined that an evidentiary hearing was required for the *Strickland* analysis in order to determine whether Coleman's testimony "could have 'provided a different version of events for the jury's consideration' and [whether] its absence prejudiced Defendant, resulting in an 'unreliable result' at trial." (ECF No. 1-3 at 84 (acknowledging "there were certain risks in calling [Coleman] and exposing [the witness] to cross examination").) In his January 2012 Motion to Amend the Verified PCR Petition, Petitioner argued that trial counsel "was constitutionally deficient because the jury was unaware of yet another witness whose proposed testimony would have demonstrated that someone other than Petitioner shot and killed Hill." (ECF No. 1-3 at 137; ECF No. 1-6 at 74.) On January 30, 2012, Judge Pursel conducted the evidentiary hearing. (ECF No. 29-38 at 1.) At that hearing, Mr. Jordan explained that he did not call Coleman because his testimony may have been inculpatory:

> Court: "Why is it that you did not call Corey Coleman to testify on defendant's behalf in this trial?"
>
> Jordan: "I believe he puts Herman [Gaines] at the party. . . . He refers to words out on the street. Again, I believe that would have been hearsay. But also that Shorty Gangsta or that Mr. Gaines was involved. I didn't want that in the trial . . . "[H]e [Corey Coleman] may have said . . . to somebody . . . that [he heard someone admit to committing the shooting] but also said that he heard that Shorty Gangsta did or it Herman Gaines did it. So I didn't want the jury to hear that."

(ECF No. 29-21 at 33 and 74.)

22

In his written opinion following the January 30 hearing, Judge Pursel relied on *Strickland*'s performance prong for the court's rejection of Gaines's ineffective assistance argument, noting: "[Mr.] Jordan did not call Mr. Coleman to testify because he placed [Petitioner] at the party and said that either Shorty Gangsta or Herman Gaines committed the shooting. Mr. Coleman also told detectives that Herman Gaines had a gun and was shooting in the street on the evening Kevin Hill was killed." (ECF No. 29-38 at 3.) The *Gaines I* court rejected Petitioner's ineffective assistance contentions and "affirm[ed] the orders denying his PCR petition, substantially for the reasons explained by Judges Reed and Pursel in their thorough decisions disposing of the issues defendant raised before them." (ECF No. 1-6 at 74-76.)

In his habeas petition, Petitioner criticizes counsel's failure to offer Coleman's testimony, arguing that it was exculpatory and would have materially affected the outcome of the case. Petitioner contends that even though Coleman "said people were saying in the 'street' that I [Gaines] was responsible for the shooting," Coleman supposedly "witnessed Raymond Rivera admit guilt for the crime [of] which I [Gaines] [am] convicted." (ECF No. 1 at 8, 9.)

Here, Petitioner has not shown that *Gaines I*'s affirmance of Judge Pursel's rejection of his ineffective assistance of counsel claim was based on an unreasonable determination of the facts in light of the evidence presented, or that it was contrary to, or an unreasonable application of *Strickland* and its progeny. Petitioner, accordingly, is not entitled to habeas relief on this ineffective assistance of counsel claim.

With regard to *Strickland*'s performance prong, Judge Pursel observed that "Mr. Gaines makes the inappropriate assumption that because in the two year period between the time the witnesses gave their sworn statements to the police and now their stories have changed to point more favorably to his case[,] that evidence . . . should be admitted at the PCR hearing. That reasoning is faulty." (ECF No. 29-38 at 3-4.) Citing *Strickland*, Judge Pursel explained:

23

> The issue is whether or not the attorney who represented him at the
> time was justified in relying upon the statements that had been given
> to the police at the time. That attorney's effectiveness will be judged
> by his conduct in relation to the statements that existed at the time
> given and not at some later period . . . . All of the alleged errors
> argued by the [P]etitioner as ineffective assistance of counsel are in
> actuality matters of trial strategy. Ultimately, defense counsel is not
> required to be infallible. Rather, counsel's performance must fall
> below an objective standard of reasonableness, and here it does not.
> *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The issues
> raised in [P]etitioner's motion are not sufficient to satisfy the
> *Strickland* test and thus do not prove ineffective assistance of
> counsel.

(*Id*. at 4.)

Given that Coleman -- who did not see the shooting itself and whose testimony not only

placed Petitioner at the party but also put a gun in his hands very shortly after the shooting occurred

-- posed the risk to Petitioner at trial of putting before the jury evidence that was more inculpatory

than exculpatory, trial counsel was not ineffective for not putting on Coleman's testimony. This

exercise of trial strategy is afforded great deference (*Strickland*, 466 U.S. at 690), especially where,

as here, the challenged testimony was risky because it would have placed Petitioner at the crime

scene with weapon in hand. (ECF No. 29-21 at 33 and 74 (Coleman said that "Mr. Gaines had a

gun and was shooting out on the street").) Under these circumstances, Mr. Jordan's determination

not to put Coleman on the stand does not meet *Strickland*'s test. *See Siehl v. Grace*, 561 F.3d 189,

195 (3d Cir. 2009) (citations omitted) ("Since *Strickland*, the Supreme Court and [the Third

Circuit] have emphasized the necessity of assessing an ineffectiveness claim in light of all the

circumstances"). Petitioner appears to seek habeas second-guessing of his counsel's exercise of

judgment as to a witness decision in which Petitioner himself joined. (ECF No. 29-15 at 15-16.)

Petitioner's expectations are misplaced.

Furthermore, the record clearly contradicts Petitioner's assertion that he expected that

Coleman would be called to testify. (ECF No. 1-3 at 58.) Petitioner represented to Judge Ashrafi

24

that the only absent witness with some importance to him was Dishon Page. (ECF No. 29-15 at 15-16.) Either Page was the *only* absent witness whose testimony was important to his defense (which was Petitioner's position at trial) or was but *one* of such witnesses (which is Petitioner's position now). Petitioner cannot cherry pick internally inconsistent characterizations of trial witnesses' significance. Nevertheless, dissatisfaction with the result of counsel's representation is not a ground for an ineffective assistance claim; merely because the strategy of not introducing certain evidence might have been unsuccessful does not mean that counsel was ineffective. *See Lockhart*, 506 U.S. at 369; *Kim*, 2006 WL 981173, at *3.

On habeas review, courts "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *United States v. Travillion*, 759 F.3d 281, 289 (3d Cir. 2014) (quoting *Strickland*, 466 U.S. at 689, and *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996)). It is not a stretch to engage in that presumption here, given the professional judgment trial counsel exercised in weighing the risks and benefits of Coleman's testimony. *See Branch v. Sweeney*, 758 F.3d 226, 234-35 (3d Cir. 2014) (quoting *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) and *Strickland*, 466 U.S. at 690) (*Strickland*'s test is demanding as there is a "strong" presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment"; habeas petitioners face a stringent requirement to show that, given all the circumstances, "counsel's mistake was so egregious that it fell 'outside the wide range of professionally competent assistance'").

Mr. Jordan's decision not to present Coleman's uncertain, equivocating, and possibly inculpatory testimony as evidence strikes this Court as a reasonable strategy, and not the substandard representation that Petitioner claims; the facts and circumstances demonstrate that counsel's decision was a strategic one that should not be challenged in hindsight. Given Petitioner's failure to meet the performance prong -- as Judge Pursel explained in his application

of *Strickland* (ECF No. 29-38) and as the Appellate Division affirmed (ECF No. 1-6 at 75) -- the ineffective assistance claim in Ground II is denied for lack of merit. *Strickland*, 466 U.S. at 697-98 ("failure to satisfy either prong defeats an ineffective assistance claim").

## B. Ground IV of the Petition: Due Process Claims Based on Alleged Violation of Sixth Amendment Right to Proceed Pro Se

Petitioner contends that he suffered deprivation of Due Process from Judge Ashrafi's refusal to allow him to represent himself pro se, as follows:

> I submitted a motion to proceed pro se which the trial court denied because I wasn't learned enough in law to competently represent myself. The trial court scheduled a later hearing to determine how much of the law I had learned in order to decide if I was to be permitted to proceed pro se. I sat in the county jail for 2 years and was anxious to follow through with the proceedings. I felt that I didn't learn enough law to satisfy the trial court and felt that undergoing another hearing to delve into the extent of my knowledge of law and what I learned would prolong my proceedings (because I knew I didn't learn enough in order to satisfy the trial court). This was the reason I waived my right to proceed pro se, and the waiver was obtained unconstitutionally since the waiver emanated from the trial court's erroneous order mandating that I learn the law in order to represent myself.

(ECF No. 1 at 11.) To properly analyze these claims, this Court briefly recounts the relevant procedural history:

Petitioner made a pre-trial motion to proceed pro se, which the trial judge denied on January 31, 2001. (ECF No. 29-2 at 33-34) (After questioning Petitioner about his pro se request, the trial court ruled: "[T]he conclusion that I reach ... is that [Mr. Gaines] ... is not making a fully knowing and intelligent decision to dispense with counsel ... So even though a defendant has a constitutional right to waive representation of counsel and represent himself, I am not at a point where I can conclude that Mr. Gaines is waiving representation of counsel knowingly and intelligently, so I am going to deny his application to represent himself in this case ... [A] knowing

26

and intelligent decision requires that you know much more about [c]ourt procedures and how you would have to conduct yourself at trial than you were able to tell me today").

The trial court twice gave Petitioner the opportunity to litigate the denial of his motions to proceed pro se (ECF No. 29-2 at 34-35; ECF No. 29-1 at 32) before trial started on November 26, 2001 (ECF No. 29-9 at 1):

(1)     Petitioner first withdrew his motion to represent himself on March 14, 2001:

| | |
|---|---|
| Gaines: | "I would like to withdraw my motion to proceed pro se." |
| Court: | "And Mr. Jordan is going to continue representing you for this case?" |
| Gaines: | "Yes." |
| Court: | "You understand that, right?" |
| Gaines: | "Yes." |
| Court: | "Alright. I think it's a wise decision, a very wise decision on your part . . . Let me just ask you: This is now your final decision in this case, and we are going to be ready to go to trial in a few months, right?" |
| Gaines: | "Yes, Your Honor." |
| Court: | "Has anyone in any way coerced you into making this decision?" |
| Gaines: | "No." |

(ECF No. 1-3 at 38; ECF No. 29-3 at 2-3.)

(2)     Petitioner requested on June 22, 2001 that Mr. Jordan be relieved as his trial counsel, based, in part, upon the allegation that Mr. Jordan had previously represented Kevin Harrell, whom Gaines believed was a potential witness. Mr. Jordan informed the court that he had no intention of calling Mr. Harrell as a witness because he had not even attended the party where the victim was killed. (ECF No. 29-4 at 11-13.)

On July 5, 2001, Petitioner changed his mind again: "Actually, Judge Ashrafi, I want to apologize to the Court for taking you through all the trials and tribulations. I changed my mind. I would like Mr. Jordan because I want to get this over with as soon as possible." (ECF No. 29-5 at 3.) Noting the several occasions on which Petitioner had vacillated on this issue, the court allowed Petitioner to continue representation with Mr. Jordan, after endeavoring to again confirm that this was Petitioner's final position on the matter:

> Court: Mr. Gaines, you have gone back and forth on me a couple of times, you wanted to represent yourself, then you said no, you wanted Mr. Jordan off the case, now you want to move ahead with Mr. Jordan. I understand you are in a difficult position and you might change your mind about things now and then. But I want to tell you something. I am not going to make it a last minute decision to put a new attorney on your case. We are going to assign a trial date to this case very soon. And you are not going to be able to come back in here and say to me at the last minute: I changed my mind again, I don't want Mr. Jordan. I am not happy with him, and now I want a new attorney. If it is going to cause a delay in the trial, I am not going to listen to you at that time.

> Gaines: That is my main objective, Your Honor.

> Court: Is it your final decision now to continue with Mr. Jordan as your attorney?

> Gaines: Yes, Your Honor.

> Court: I don't really find any reason that Mr. Jordan should not continue as your attorney.

(ECF No. 29-5 at 8.) Judge Ashrafi thus denied what had been Petitioner's second motion to relieve counsel. (ECF No. 1-3 at 38.)

The Appellate Division's May 26, 2005 opinion on direct appeal affirmed Gaines's convictions but remanded for resentencing. The Appellate Division's May 26, 2005 opinion also addressed "the points raised in his pro se brief [that] [the Judge's] refusal to allow Defendant to

28

proceed pro se was erroneous and deprived defendant of his right[s] secured by [the Constitution], his right to assistance of counsel, and his right to a fair trial by an impartial jury." (ECF No. 29-25 at 25-26.) The Appellate Division stated that it found this issue:

> ... without sufficient merit to warrant more than limited discussion in a written opinion ... We provide a brief explanation for that conclusion ... Defendant's claim[] [regarding the right to self-representation] ha[s] no support in the record ... The record reflects that he knowingly and intelligently waived his right to proceed pro se ... and he withdrew his request to disqualify his attorney based on an alleged conflict of interest.

(ECF No. 29-25 at 27, 29.) The Appellate Division summarily rejected the issue as lacking merit.

Judge Reed's October 13, 2010 opinion on the September 29, 2007 Verified PCR Petition and the October 18, 2007 supplemental PCR petition rejected the argument that Judge Ashrafi erred in failing to remove Mr. Jordan as counsel. Judge Reed provided two bases for the October 13 ruling: (1) Petitioner's argument had already been "raised and rejected on Defendant's direct appeal and is therefore barred from consideration by this Court" (ECF No. 1-3 at 72) (citing New Jersey Rule of Court 3:22-5[4]); and (2) "a defendant may not use a post-conviction relief petition as an opportunity to re-litigate a claim already decided on the merits" (*id.*) (citing *State v. Franklin*, 184 N.J. 516, 528 (2005), and *State v. McQuaid*, 147 N.J. 464, 483-84 (1997)). Beyond these two rationales, Judge Reed continued, "[i]n the interests of completeness and to properly inform the Court's decision [regarding] the conflict issue[]" (ECF No. 1-3 at 73) to consider facts of record, there does not appear, [in any event,] to be any conflict of interests which would have warranted the disqualification of Mr. Jordan as counsel." (*Id.* at 74.)

---

[4] "A prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings." N.J. Ct. R. 3:22-5.

29

Following appeal from denial of his PCR application, Petitioner filed pro se briefs that alleged: ineffective assistance of counsel, "uniformity exhibited by the various departments and individuals [in] violati[on] of defendant's due process rights," and "judicial vigilantism," including "judges deny[ing] defendant competent application of law [and] fair and timely process of his appellate proceedings." (ECF No. 1-6 at 73-74.)

The *Gaines I* court found no merit to Petitioner's claims and deferred entirely to the Law Division's findings: "The arguments defendant sets forth in 'Issue I' [regarding 'judicial vigilantism'] and 'Issue III' [regarding Due Process violations] are without sufficient merit to warrant discussion in a written opinion. *R.* 2:11-3(e)(2)." (ECF No. 1-6 at 74-75.)

With respect to the issue of self-representation, this Court finds on Petitioner's habeas petition that *Gaines I* was not "contrary to or an unreasonable application of clearly established federal law" (28 U.S.C. § 2254(d)(1)) and it was not based on an "unreasonable determination of the facts" in light of the evidence before it (28 U.S.C. § 2254(d)(2)), as discussed below.

Criminal defendants have a right, under the Sixth Amendment, to self-representation. *See Faretta v. California*, 422 U.S. 806, 832 (1975). Nevertheless, "[e]ven at the trial level . . . the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Indiana v. Edwards*, 554 U.S. 164, 177 (2008) (quoting *Martinez v. Ct. of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 162 (2000)). Thus, "the right to self-representation is not absolute" (*Edwards*, 554 U.S. at 171), and given that criminal defendants managing their own defense "relinquish, as a purely factual matter, many of the traditional benefits associated with the right to counsel" (*Faretta*, 422 U.S. at 835), the right to proceed pro se may only be exercised if the defendant first knowingly and intelligently waives his or her right to counsel. *McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984).

In order to overcome the presumption against waiver of counsel and to conduct his own defense, "a defendant must clearly and unequivocally ask to proceed pro se." *Buhl v. Cooksey*, 233 F.3d 783, 790 (3d Cir. 2000) (citations omitted); *see also Stano v. Dugger*, 921 F.2d 1125, 1143 (11th Cir. 1991) (en banc) (while the right to counsel "attaches automatically and must be waived affirmatively to be lost," the right to self-representation does not "attach unless and until it is asserted"). "[T]he issue is whether a defendant knowingly, intelligently, and voluntarily waived the right to be represented by counsel, by clearly asserting his/her right of self-representation under the Sixth Amendment." *Buhl*, 233 F.3d at 791.

It is well established that a defendant can waive the right of self-representation after asserting it. *Buhl*, 233 F.3d at 800. "[C]ourts have commonly found waiver [of the right to self-representation] where the defendant has vacillated between being represented by counsel and self-representation, where defendant abandons his or her request for self-representation, and where the defendant elects to act as co-counsel." *Planker v. Warren*, No. 11-5610, 2013 WL 5937423, at *14-15 (D.N.J. Nov. 1, 2013) (referencing the principle that "outrageous conduct" might "justify termination of [the] right of self-representation," finding no error in the decision to prohibit defendant from representing himself where he abandoned his request to act as co-counsel mid-trial, and noting that the trial court "went out of [its] way to preserve defendant's rights") (citing *Buhl*, 233 F.3d at 800).

For example, in *United States v. Bennett*, 539 F.2d 45 (10th Cir. 1976), the defendant asked to assist in his own defense, and the district court permitted him to cross-examine certain witnesses. The defendant then asked and was permitted to proceed pro se as to his entire defense. The defendant, however, renewed his request at a pre-trial hearing to only "assist" counsel. The district court, therefore, reappointed counsel and granted defendant's motion to assist with cross-examination. The defendant next asked to represent himself, which the court denied. The defendant

31

was ultimately convicted at trial while represented by counsel. On appeal, the *Bennett* court rejected the defendant's argument that his right to self-representation had been denied. The Tenth Circuit held that the defendant "forfeited his right to self-representation by his vacillating positions which continued until just six days before the case was set for trial." *Id.* at 51. *See also United States v. Mathauda*, 680 F. App'x 805 (11th Cir. 2017) (holding that the defendant waived his constitutional right to represent himself at his sentencing by vacillating on the issue and not clearly and unequivocally asserting his right and explaining that "[e]ven if a defendant properly invokes his *Faretta* rights [to represent himself], he can still waive them if he requests self-representation but engages in subsequent conduct showing a vacillating position on the issue. *See Gill v. Mecusker*, 633 F.3d 1272, 1295-96 (11th Cir. 2011) (explaining that the defendant's vacillation made his request for self-representation equivocal)"); *Martin v. Thaler*, No. 7:07-cv-128-0, 2010 WL 645304, at *2 (N.D. Tex. Feb. 24, 2010) (noting that "[e]ven where a criminal defendant has asserted his right to self-representation, that right may be waived pursuant to subsequent conduct which indicates that the defendant is vacillating on the issue of self-representation or when his subsequent conduct indicates that he has abandoned his request altogether"; concluding that "[a]ppellant's assertion of his right to self-representation was never clear and unequivocal" where "the record indicates that at every hearing held in the trial court, [a]ppellant continued to vacillate regarding whether he desired to exercise his right to self-representation or accept representation by appointed counsel"; and ruling that the trial court's refusal to allow defendant to represent himself in his criminal case was therefore not a violation of his right to self-representation under the Sixth Amendment).

Here, the Appellate Division's May 26, 2005 opinion correctly identified and applied the applicable Supreme Court precedent of *Faretta* regarding the right to self-representation and waiver of that right, as well as lower court opinions interpreting that precedent. (ECF No. 29-25

at 29.) The Appellate Division found that "[t]he record reflects that [Gaines] knowingly and intelligently waived his right to proceed pro se, and he withdrew his request to disqualify his attorney based on an alleged conflict of interest." (ECF No. 29-25 at 29.) It was reasonable for the Appellate Division to conclude that Petitioner had failed to clearly and unequivocally assert his *Faretta* rights based upon his effective waiver of the self-representation right when he told Judge Ashrafi on July 5, 2001 that his "final decision" was to proceed at trial with Mr. Jordan representing him. (ECF No. 29-5 at 3, 8[5]), given:

> (1)     Petitioner's repeated vacillations regarding self-representation (ECF No. 1-3 at 38; ECF No. 29-3 at 2-3; ECF No. 29-4 at 11-12; ECF No. 29-5 at 3; ECF No. 29-5 at 8);
>
> (2)     The reasonable presumption against waiver of counsel;
>
> (3)     The extensive exchanges on the record between Petitioner and Judge Ashrafi regarding the implications of his representation election (ECF No. 1-3 at 38; ECF No. 29-3 at 2-3; ECF No. 29-5 at 8); and
>
> (4)     Petitioner's arguable "last word" on representation being that he wished to proceed with Mr. Jordan. (ECF No. 29-5 at 8; ECF N0. 1-3 at 38.)

In short, Petitioner's representation to Judge Ashrafi was the polar opposite of a "clear and unequivocal" (*Buhl*, 233 F.3d at 791, 792) statement that he wished to proceed pro se and that he did not wish to be represented by counsel.

The Appellate Division's decision, therefore, was not "contrary to or an unreasonable application of clearly established federal law" (§ 2254(d)(1)) and it was not based on an "unreasonable determination of the facts" in light of the evidence before it (§ 2254(d)(2)). The

---

[5] "Actually, Judge Ashrafi, I want to apologize to the Court for taking you through all the trials and tribulations. I changed my mind. I would like Mr. Jordan because I want to get this over with as soon as possible." (ECF No. 29-5 at 3, 8.)

Appellate Division relied on and applied the Supreme Court precedent of *Faretta* in reasoning that Petitioner had effectively waived his right to self-representation; further, it was reasonable to find that Petitioner knowingly and intelligently waived his right to proceed pro se and that he withdrew his request to disqualify Mr. Jordan based on the alleged conflict of interest. Furthermore, since Petitioner made at least two requests to have Mr. Jordan relieved as counsel, and each time he made such a request, Petitioner subsequently "changed his mind" and affirmatively stated to the court that he wished to have Mr. Jordan continue to represent him, Petitioner jeopardized the integrity of the criminal proceedings.

Granting habeas relief on Ground IV would represent an unjustifiable third bite at the self-representation apple, which this Court cannot countenance. Petitioner "received more than a fair chance" to proceed in a manner that observed his constitutional rights to represent himself. *Planker*, 2013 WL 5937423, at *15. In fact, he received more than one chance.

Petitioner, accordingly, is not entitled to habeas relief on Ground IV of the Petition.

## C. Ground V of the Petition: Claims Regarding Defects in the PCR Proceedings

Petitioner challenges the February 2012 decision of Judge Pursel (ECF No. 29-38) to deny the motion to supplement the record (Gaines's "Motion to Supplement Challenge"), to deny the motion to amend the verified petition (Gaines's "Motion to Amend Challenge"), and to deny the PCR claims related to the testimony of Corey Coleman (Gaines's "PCR Coleman Claims") (these three decisions collectively referred to as "the PCR Court Ruling"). (ECF No. 1 at 13.)

By way of background to the Motion to Supplement Challenge, this Court notes that on or about January 9, 2012, Petitioner filed a Motion to Supplement and/or Settle the Record Pursuant to New Jersey Court Rule 2:5-5(a), to include in the record Gorrell's August 20, 1998 sworn taped statement and her December 29, 2011 Certification. (ECF No. 1-3 at 92-112 and 155-79.) The PCR court denied the Motion and stated that:

> [T]here is no need to settle the record nor is it appropriate to supplement the record. There exists no issue regarding whether any transcript accurately represents what was said in any court proceeding. Petitioner furnishes no basis for that request. It is therefore DENIED. Petitioner requests to supplement the trial record with the taped statement of Jamilah Gorrell and her December 29, 2001 certification. This request is inappropriate. The court must consider, in ruling on such motions to supplement the record, (1) whether at the time of the hearing or trial the petitioner knew of the information he now seeks to include in the record and (2) whether it is likely to affect the outcome of that hearing. Petitioner has set forth no excuse for his failure to include or make these arguments in front of Judge Reed at the time it was appropriate to do so. It appears to the court that petitioner, under the guise of *R*. 2:5-5a, is making a motion to reconsider Judge Reed's October 13, 2010 Order denying petitioner's PCR petition with regard to trial counsel's failure to call Ms. Gorrell. Petitioner may appeal the decision of Judge Reed, but this court finds no justification for modifying any record of matters presented to Judge Reed and finds that there is no new evidence which would require the court to reconsider Judge Reed's decision. That decision was based on numerous grounds and is a matter of record.

(ECF No. 29-38 at 4-5.)

By way of background to the Motion to Amend Challenge, this Court notes that in January

2012, Petitioner submitted a proposed Amended Verified Petition for PCR relief (ECF No. 1-3 at

113-56 and 180-83) to further amend his PCR petition that Judge Reed had already given leave to

amend in the Judge's October 13, 2010 opinion. (ECF No. 1-3 at 69-71.) The PCR court denied

the Motion:

> Petitioner also moves to further amend his petition. The judge below, Judge Reed, granted petitioner's motion to amend his petition by his Order of October 13, 2010, upon which Order the court held an extensive hearing with the presence of counsel. For the reasons stated above, the request to amend the petition is DENIED . . . . The issues raised in petitioner's motion are not sufficient to satisfy the *Strickland* test and thus do not prove ineffective assistance of counsel.

(ECF No. 29-38 at 4, 5.)

By way of reference to Ground II discussed at length elsewhere in this opinion, this Court notes that "[t]he question presented at [the January 30, 2012] hearing was whether or not trial counsel's failure to call . . . Corey Coleman . . . constituted ineffective assistance of counsel." (ECF No. 29-38 at 1.) Judge Pursel denied the PCR Coleman Claims for Petitioner's failure to satisfy the two-prong *Strickland* test. (*Id.* at 4.)

Petitioner's habeas arguments regarding the PCR Court Ruling in Ground V lack merit. Infirmities in a state PCR proceeding do not raise constitutional questions in a federal habeas action. Habeas petitioners are not entitled to relief based upon any alleged deficiencies in state PCR proceedings because purported errors in state post-conviction relief proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief. *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998), *cert. denied*, 526 U.S. 1065 (1999) ("The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation . . . . Federal habeas power is limited . . . to a determination of whether there has been an improper detention by virtue of the state court judgment"; what occurs in state collateral review proceedings "does not enter into the habeas calculation").

Thus, the Motion to Supplement Challenge, the Motion to Amend Challenge, and the PCR Coleman Claims do not raise claims that are cognizable in a federal habeas proceeding. Even if the errors in Petitioner's state PCR proceedings (as suggested in Ground V of the Petition) are presumed to have been present, they are irrelevant to the instant habeas matter because they were collateral to Petitioner's conviction and sentence and thus cannot give rise to a claim for federal habeas relief. *See Hassine*, 160 F.3d at 954. *See also* 28 U.S.C. § 2254(i).

Accordingly, Ground V is denied for failure to assert a violation of Petitioner's federal rights.

## IV.    CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

For the reasons expressed above, jurists of reason could not disagree that Petitioner's claims are lacking in merit. Therefore, because this Court's review of the claims advanced by Petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c). *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## V.    CONCLUSION

For the reasons set forth above, the Petition is DENIED, and the Court DENIES a certificate of appealability.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated:  February 22, 2019